IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PETER CURLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-cv-00954-M |
| | § | |
| TRADITION SENIOR LIVING L.P., | § | |
| | § | |
| Defendant. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

In this age and disability discrimination case, Plaintiff Peter Curley claims that he was illegally fired because of his age and an alleged disability. Defendant moves for summary judgment on Plaintiff's Age Discrimination in Employment Act ("ADEA") and Americans with Disabilities Act ("ADA") claims. The Court finds that summary judgment should be granted for Defendant.

**I. Background**

    **A. Factual Background**

In June 2014, Plaintiff was hired as the Executive Chef at a senior living facility. [ECF No. 20-1 at App.17–19; App.62]. Non-party Tradition Management, LLC was responsible for management of the senior living facility, and is a subsidiary of Defendant Tradition Senior Living, LP ("TSL"). [*Id*. at App.113]. The "Employee Acknowledgement" form, signed by Plaintiff at his hiring, identifies Tradition Management as his "Worksite Employer," and Offsite HR, LLC as his "alternative employer for Worker's Compensation benefits." [*Id*. at App.59; App.62]. The "Team Member Handbook" that Plaintiff received states: "You are an employee of Tradition Management, LLC, a Texas limited liability company, and a subsidiary of Tradition

Senior Living, LP." [*Id*. at App.68]. Plaintiff was 65 years old when he was hired. [*Id*. at App.17; App.20].

Plaintiff was employed at the senior living facility until he was fired on June 23, 2017. [*Id*. at App.181]. Plaintiff received written performance reviews in August 2014 and July 2015. [*Id*. at App.169–71; App.172–74]. These reviews were generally positive, but noted that Plaintiff needed to improve his performance of certain administrative aspects of his job, such as producing accurate menus, correctly coding items for invoices, and fostering good relationships with team members. [*Id*. at App.169–70; App.172–174].

In March 2017, Tradition Management hired a new Food and Beverage Director, Robin Murphy, who became Plaintiff's supervisor. [*Id*. at App.178]. Murphy declares that he initially noted that Plaintiff performed the culinary aspects of his job well and that he was well liked by the residents of the facility. [*Id*. at App.179]. However, Murphy also declares that he later determined that Plaintiff's performance of the administrative functions of his job was lacking. [*Id*.]. On May 17, 2017, Murphy met with Plaintiff to discuss these shortcomings. [*Id*.]. The content of the discussion was memorialized in an "Employee Warning Notice." [*Id*. at App. 183].

The Warning Notice noted that Plaintiff had not produced a new series of "seasonal menus" as directed, was not properly coding invoices, was not controlling overtime or making required edits to team members' time sheets, and was generally failing to provide strong leadership of the kitchen staff. [*Id*.]. At their meeting, Murphy informed Plaintiff that he would be fired if he did not correct these deficiencies. [*Id*. at App.180].

Also in May 2017, Plaintiff developed knee pain, caused by arthritis, which caused him to walk with a limp. [*Id*. at App.25–26]. Plaintiff did not use a cane or walker, but wore a knee brace at times. [*Id*.]. Plaintiff testified that his knee condition did not prevent him from

performing his job, and that it does not now prevent him from performing his new job as a restaurant chef. [*Id*. at App.28–29]. Murphy acknowledged that he noticed Plaintiff's limp and inquired about it. [*Id*. at App.181]. Plaintiff responded that he was "fine" and suffering from "wear and tear." [*Id*.; *see also id*. at App.29]. Murphy testified that he did not believe Plaintiff's limp impacted Plaintiff's work in any way. [*Id.* at App.181–82]. Jonathan Pearlman, the manager of Tradition Management and the Founder and CEO of TSL, who eventually fired Plaintiff, testified that he was not aware that Plaintiff walked with a limp. [*Id*. at App.112; App.116; ECF No. 26 at Resp. Appx.51]. Plaintiff, however, presented evidence that Pearlman was present when Plaintiff was limping. [ECF No. 26 at Resp.Appx.43].

Murphy continued to monitor Plaintiff's performance, but, in Murphy's estimation, it did not improve. [ECF No. 20-3 at App.181]. Plaintiff concedes that he did not produce the new "seasonal menus" that Murphy requested. [*Id*. at App.44–45]. Murphy recommended to Pearlman that Plaintiff be terminated. [*Id*. at App.115–16; App.181]. Pearlman accepted the recommendation and Plaintiff was terminated on June 23, 2017, at the age of 67. [*Id*. at App.36, App.181]. Plaintiff was offered a severance agreement which noted that it was "made and entered into by and between [TSL] and [Plaintiff]." [ECF No. 26 at Resp. App.44]. Plaintiff declined to sign the severance agreement. [ECF No. 20-1 at App.181].

**B. Procedural History**

Plaintiff initially sued Defendant in state court, alleging violations of the Texas Labor Code. *See Curley v. Tradition Senior Living LP*, No. DC-17-09309 (44th Dist. Ct. Dallas County, Tex. July 29, 2017). Plaintiff nonsuited that action without prejudice on February 19, 2018. *Id*.

Plaintiff filed this action on April 16, 2018. [ECF No. 1]. He brings claims for violations of the ADA and ADEA, and for a declaratory judgment prohibiting Defendant from engaging in

unlawful employment practices and ordering that Plaintiff be reinstated with back pay. [ECF No. 1 at 3–4]. Defendant moved for summary judgment and the Court held a hearing on the Motion on April 16, 2019. [ECF No. 33].

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual issue is material "if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). A factual dispute is "'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997). The Court is required to view all facts and draw all reasonable inferences in the light most favorable to the non-moving party and to resolve all disputed factual controversies in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

## III. Analysis

The Court first notes that, given the record, doubt exists as to whether Defendant TSL qualifies as an employer subject to liability under either the ADA and ADEA and whether TSL was, in fact, Plaintiff's employer. However, even assuming that TSL is properly subject to liability and was Plaintiff's employer, the record evidence establishes that Defendant is nevertheless entitled to summary judgment on all of Plaintiff's claims.

### A. ADA and ADEA Claims: Pretext

Summary judgment is proper on Plaintiff's ADA and ADEA claims because Defendant has established a legitimate nondiscriminatory reason for terminating Plaintiff, and the evidence submitted by Plaintiff is insufficient to support a pretext claim. Under the Supreme Court's

decision in *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the termination. *Id*. Then, under the ADA, "the burden shifts back to the plaintiff to establish that the defendant's reason either is pretext for discrimination or is only one of the reasons for its conduct and another motivating factor is the plaintiff's protected characteristic." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Similarly, under the ADEA, the employee must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Goudeau*, 793 F.3d at 474.

Defendant presents evidence of Plaintiff's failure to adequately perform the administrative functions of his job. These shortcomings include: (1) failure to timely prepare new menus, (2) promising to pay raises to employees without authority to do so, (3) failure to properly lead his team, (4) failure to properly manage food and labor budgets, (5) failure to perform necessary edits to employee time records, and (6) failure to apply necessary accounting codes to invoices. [ECF No. 20-3 at App.180]. Evidence of these shortcomings, provided by Murphy's declaration and the Employee Warning Notice given to Plaintiff in 2017, is further corroborated by Plaintiff's July 2015 performance review, which notes many of the same administrative weaknesses. [*Id*. at App.172–74]. Pearlman also testifies that in 2014, Plaintiff's then supervisor also recommended that he be fired due to his administrative shortcomings. [*Id*. at App.116]. Plaintiff concedes that he never produced the new menus requested by Murphy at the May 17, 2017 meeting. [*Id*. at App.44–45].

Because Defendant has offered a legitimate nondiscriminatory reason for Plaintiff's termination, Plaintiff bears the burden of showing that this reason was pretextual. *Goudeau*, 793

F.3d at 474; *McCoy*, 492 F.3d at 556. In an attempt to meet this burden, Plaintiff makes unsupported assertions that Defendant did not want a chef with a limp and that he was fired because of his age. [ECF No. 20-1 at App.37; ECF No. 26 at Resp. App.3]. Plaintiff also presented the declaration of Debra Brown, who declared her belief that Plaintiff was fired because of his age and his limp. [ECF No. 26 at Resp.Appx.80–81]. Brown also declared that TSL had no intent to fully change the menu, despite using the failure to produce new menus as a reason for terminating Plaintiff. [*Id*. at Resp.Appx.79]. Finally, Plaintiff presented the Declaration of Gregory True, which the Court struck from the evidence on Defendant's motion because True was not timely disclosed as a witness and Plaintiff did not show good cause for this failure.

"To demonstrate pretext, the plaintiff must do more than 'cast doubt on whether [the employer] had just cause for its decision'; he or she must 'show that a reasonable factfinder could conclude that [the employer's] reason is unworthy of credence.'" *Moore v. Eli Lily & Co.*, 990 F.2d 812, 815–16 (5th Cir. 1993). The evidence offered by Plaintiff is insufficient to carry this burden. The unsupported assertions of Plaintiff and Brown, which allege that Plaintiff was fired because of his age and his limp, are not evidence of pretext. And Brown's assertion that TSL did not intend to *implement* a fully revised menu does not rebut the evidence that Plaintiff was tasked with drafting *proposed* revised menus and, undisputedly, failed to do so. Plaintiff has failed to show that Defendant's reasons for his firing are pretextual and summary judgment is therefore proper on both his ADA and ADEA claims.

### B. ADA Claim: Plaintiff's Alleged Disability

Defendant is also entitled to summary judgment on Plaintiff's ADA claim because the record evidence establishes, as a matter of law, that Plaintiff was not legally disabled under the ADA. The ADA defines a disability as either (1) a physical or mental impairment that

substantially limits one or more of the major life activities, (2) a record of such an impairment, or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). The Fifth Circuit has held that the fact that a plaintiff "walks with a limp and moves at a significantly slower pace than the average person" "does not rise to the level of substantial impairment as required by the ADA . . . ." *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1025 (5th Cir. 1999). Plaintiff's limp does not qualify as a substantially limiting impairment.

Further, there is no evidence that Defendant regarded Plaintiff as having a substantial impairment. Plaintiff offers evidence that Murphy noticed his limp and inquired about it. [ECF No. 20-1 at App.181]. Plaintiff also presented evidence that Pearlman was present when Plaintiff was limping. [ECF No. 26 at Resp.Appx.43]. Pearlman testified, to the contrary, that he was not aware that Plaintiff walked with a limp. [*Id*. at App.116]. Even if Murphy and Pearlman were aware of the limp, however, this is not sufficient, by itself, to show that they regarded him as having an impairment that substantially limited a major life function. *Miles-Hickman v. David Powers Homes, Inc.*, 589 F. Supp. 2d 849, 865 (S.D. Tex. 2008) ("[T]o be 'regarded as' disabled," a plaintiff cannot simply rely on an employer's knowledge of an employee's physical condition.").

Plaintiff's evidence that TSL regarded him as having a disability that substantially limited a major life function is his testimony that Murphy "suggested . . . the he should sit in [his] office from 7 [A.M.] and leave work around 3 [P.M.] because of his limp." [ECF No. 26 at Resp.Appx.42]. Even if such a suggestion was made, however, it is not evidence that Murphy regarded Plaintiff's limp as substantially impairing a major life activity because it does not show that Murphy believed that Plaintiff could not walk, could not work, or could not perform some other major life function. *Harville v. Texas A&M Univ.*, 833 F. Supp. 2d 645, 660 (S.D. Tex. 2011) ("Under the ADA, a plaintiff is 'regarded as' disabled if she has 'a physical or mental

impairment that does not substantially limit major life activities, but she is treated as such by an employer.'" (quoting *McInnic v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 281 (5th Cir. 2000)).

Instead, all of the other evidence suggests that Plaintiff's employer did not regard him as having such an impairment. Murphy testified that he did not perceive the limp as impacting Plaintiff's work. [*Id*. at App.181–82]. And Plaintiff responded to Murphy's inquiries about the limp by emphasizing that he was "fine" and suffering only from "wear and tear." [*Id*.; *see also id*. at App.29]. Plaintiff concedes that the limp did not prevent him from performing his job at TSL. [*Id*. at App.29]. And, further, Plaintiff's declarant Debra Brown emphasizes that Plaintiff, in spite of his limp, "worked incessant long hours in an understaffed kitchen." [ECF No. 26 at Resp.Appx.80]. The Court concludes that Plaintiff cannot show that this employer regarded him as having an impairment that substantially limited a major life activity.

Because Plaintiff cannot show the existence of a substantial impairment, or that his employer regarded him as having such an impairment, Plaintiff cannot prove that he was disabled under the ADA and summary judgment is proper.

### C.  Hostile Work Environment Claim

The Court also grants summary judgment on Plaintiff's hostile work environment claim. A plaintiff may bring a hostile work environment claim under the ADEA. *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011). This claim requires establishing that (1) the plaintiff was over 40, (2) the plaintiff was subjected to harassment, either through words or actions, based on age, (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment, and (4) there exists some basis for liability on the part of the employer. *Id*.

To show the existence of an objectively hostile work environment, Plaintiff suggests that he was burdened by long hours, that the kitchen layout was dangerous, and that another cook

would brandish knives in the kitchen while making racially-charged comments. [ECF No. 25 at 12–14]. These things, however, cannot support Plaintiff's ADEA hostile work environment claim because they are not related to Plaintiff's age. *See, e.g.*, *Gonzalez v. Wells Fargo Bank, N.A.*, 733 Fed. App'x 795, 798 (5th Cir. 2018) ("[Plaintiff] failed to offer any evidence that [increased supervisor scrutiny] was connected to her age.").

Plaintiff's evidence of age-related harassment is only that a sous chef told other employees that Plaintiff "was too old for [his] job and that [the sous chef] was going to get [Plaintiff's] job." [ECF No. 20-1 at App.39]. These comments cannot support Plaintiff's claim of the existence of an objectively hostile work environment. "[O]ccasional age-based comments, discourtesy, rudeness, or isolated incidents (unless extremely serious) are not discriminatory changes in the terms and conditions of a worker's employment." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 443 (5th Cir. 2012). The sous chef was reprimanded for his behavior, and Plaintiff participated in this reprimand. [ECF No. 20-1 at App. 39–40]. On these facts, it cannot be said that Plaintiff's work environment was "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment." *Id*. Therefore, Defendant is also entitled to summary judgment on Plaintiff's hostile work environment claim.

## IV. Conclusion

For the reasons stated above and on the record at the hearing, Defendant's Motion for Summary Judgment [ECF No. 18] is **GRANTED**. Pursuant to Federal Rule of Civil Procedure 58, a final judgment that Plaintiff take nothing on his claims against Defendant will issue separately.

**SO ORDERED**.

June 6, 2019.

_____
BARBARA M. G. LYNN
CHIEF JUDGE